UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Case No. 2:18-cr-20800

HONORABLE STEPHEN J. MURPHY, III

v.

D-1 RAJENDRA BOTHRA,
D-4 DAVID LEWIS,
D-5 CHRISTOPHER RUSSO,

        Defendants.
_____/

**OPINION AND ORDER**
**DENYING MOTION IN LIMINE TO EXCLUDE RECORDS [328]**

Defendants were physicians licensed to practice medicine in Michigan. ECF 1, PgID 6–8. Each Defendant was named in a 56-count indictment that the Court unsealed in late 2018. *See generally* ECF 1; 9. Defendants were charged with health care fraud conspiracy under 18 U.S.C. § 1349; aiding and abetting health care fraud under 18 U.S.C. §§ 1347 and 2; conspiracy to distribute and possess with intent to distribute controlled substances under 21 U.S.C. §§ 841(a)(1) and 846; and aiding and abetting the unlawful distribution of controlled substances under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. *See generally* ECF 1. Defendants are to be tried by jury on May 17, 2022. ECF 329, PgID 2405.

One Defendant, Dr. David Lewis, moved to exclude records of patients not in the indictment and for the Court to order production of electronic medical records. ECF 328. Two other Defendants, Dr. Rajendra Bothra and Dr. Christopher Russo,

1

filed notices of joinder and concurrence in the motion. ECF 335; 339. A fourth Defendant, Dr. Ganiu Edu, is scheduled for trial with the three other Defendants but did not join the present motion. The Court will deny the motion.[1]

## BACKGROUND

Dr. Bothra owned and operated The Pain Center and The Interventional Pain Center, both professional limited liability companies located in Southeast Michigan. ECF 1, PgID 6. The two facilities were participating providers with Medicare and Medicaid and would submit claims to the programs. *Id.* Dr. Lewis and Dr. Russo, along with Dr. Bothra, were licensed physicians in Michigan and enrolled as participating providers with Medicare at the two companies. *Id.* at 6–8. All three were also licensed by the Drug Enforcement Administration to prescribe controlled substances. *Id.*

Dr. Lewis's motion asks the Court to issue two orders. The first order would exclude from proof at trial the records of patients not named in the indictment. ECF 328, PgID 2393–97. The second would require the Government to immediately produce electronic medical records in a specific format. *Id.* at 2387–93.

The facts surrounding the request for the first order are simple. The indictment listed examples of when Defendants aided and abetted both healthcare fraud and the unlawful distribution of controlled substances based on their treatment of specific patients. *See generally* ECF 1. But, according to Dr. Lewis, the Government produced

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* E.D. Mich. L. Crim. R. 12.1; E.D. Mich. L.R. 7.1(f)(2).

2

records for 134 patients, which were pulled from more than 28,000 records also produced to Defendants. ECF 328, PgID 2386. Dr. Lewis now argues that only the records of the small set of patients named in the indictment are admissible at trial, rather than all the records the Government has produced. *Id.* at 2393–97.

The Court, in a June 2020 order, decided that all billing and prescription data the Government had produced is likely admissible to prove the conspiracy charges against Defendants. ECF 232, PgID 1574–75. In that order, the Court reasoned that "the entirety of Defendants' billing and prescription data during the time frame alleged in the indictment is relevant to show the alleged overall scheme" because the elements the Government must prove to establish the charged conspiracies involve proof of an overarching agreement. *Id.* The Court also noted that "Defendants['] billing and prescribing practices, beyond those listed in the indictment, are admissible in order to show a common plan, scheme, or absence of mistake or accident" under Federal Rule of Evidence 404(b). *Id.* at 1575. But the Court's order lacked prejudice so that "Defendants [could] renew their objections if or when the Government attempts to admit such evidence at trial." *Id.* The present motion in limine is the renewal of those objections.

Unlike the facts surrounding the request for the first order, the facts surrounding the request for the second order are complex and disputed. The indictment alleged that the conspiracies took place between January 2013 and late 2018. ECF 1, PgID 8–9, 27. Similarly, the indictment alleged that the aiding and abetting offenses for Dr. Bothra took place between September 2013 and January

3

2018, *id.* at 12–13, 28; the aiding and abetting offenses for Dr. Lewis took place between October 2017 and June 2018, *id.* at 21, 31; and the aiding and abetting offenses for Dr. Russo took place between April 2017 and March 2018, *id.* at 23, 32–33.

Between 2013 and sometime in the first half of 2017, Defendants did not store their patients' medical records electronically. ECF 328, PgID 2383; ECF 337, PgID 2454. Defendants instead kept the records in the traditional hard-copy manner. ECF 337, PgID 2454. But during the first half of 2017, Defendants modernized their practice and began to electronically store their patients' medical records. ECF 328, PgID 2383; ECF 337, PgID 2454. The specific electronic system Defendants used was developed by Practice Fusion, Inc. ECF 337, PgID 2454.

Practice Fusion's technical operations department relayed to the Government that "Practice Fusion does not maintain access for itself or its employees to customer [] accounts through the online user interface." ECF 328-1, PgID 2401. But in response to search warrants and subpoenas, Practice Fusion can "produce[] data exports" through "structured query language [] search queries to extract stored data." *Id.* at 2400–01. All data gathered in the searches is then "rendered in [a] Microsoft Excel format." *Id.* at 2400. And any external documents uploaded to specific patient data tables in the system are produced in either PDF or JPEG formats. *Id.* at 2401.

The Government argued that Practice Fusion produced all the information Defendants input into the Practice Fusion system for the patients at issue, ECF 337, PgID 2455–56, and that Practice Fusion produced the information in excel

4

spreadsheets, *id.* But the Government admitted that the spreadsheets are clunky and take practice to navigate. *Id.*; *see also* ECF 338-1 (under seal).

While the information the doctors input would create clean patient charts and organized tables on the user interface, that user interface was restricted and could be viewed only through the doctors' Practice Fusion account. ECF 328-1, PgID 2400. Practice Fusion cannot access the user interface versions of the charts and tables, which is why they produced the raw data to the Government.[2] *Id.* at 2400–01. Practice Fusion could recreate the charts and organized tables in the way the user interface displayed them to the doctors, but the process would be manual and burdensome. *Id.* at 2401. The Government maintained that there is no legal basis that requires the Government to order Practice Fusion to create the charts and organized tables manually and that the Government has no *Brady* obligation to turn over charts and tables that the Government does not possess. ECF 337, PgID 2455.

Dr. Lewis disagrees. First, Dr. Lewis asserted that the Government's excel spreadsheet productions of the Practice Fusion data and information are only summaries of the records kept on the Practice Fusion system and not the complete patient records. ECF 341, PgID 2520. According to Dr. Lewis, the Court should bar the Government from introducing the "summaries" at trial unless the Government

---

[2] The Government is adamant that at least Dr. Bothra maintains access to the account that has the user interface versions of the charts and tables because "[a]ccount users maintain access to their accounts even after a subscription becomes inactive." ECF 337, PgID 2454–55 (citation omitted). Defendants are equally adamant that they no longer have access to the account and that Dr. Bothra cannot access the interface while in jail. ECF 328, PgID 2387; ECF 341, PgID 2521–22.

produces the information as originally viewable to the doctors on the user interface. *Id.* at 2521. The Court understands Dr. Lewis's use of the term "summaries" to mean that Dr. Lewis does not believe that all the information the doctors put into the Practice Fusion system was included in the data that Practice Fusion compiled for the Government. *See generally* ECF 341.

Second, Dr. Lewis suggests that even if the excel sheets do contain all the data input by the doctors, the excel format is too complex to sort through, and any attempt to use the excel data and information at trial by either party would inevitably be inaccurate due to a multitude of possible human errors in analyzing and sorting through the excel spreadsheets. *Id.* at 2522. Thus, Dr. Lewis believes that admission of the information without Defendants having had access to the user interface charts and organized tables would be prejudicial to Defendants. *Id.* at 2524–25.

## LEGAL STANDARD

For the request to exclude the records of patients not in the indictment, "[a] district court may admit uncharged background evidence as long as it is 'inextricably intertwined' with the underlying offense" under an "intrinsic acts" theory. *United States v. Edmond*, 815 F.3d 1032, 1045 (6th Cir. 2016), *vacated and remanded on other grounds by Harper v. United States*, 137 S. Ct. 1577 (2017) (mem.) (quotation omitted). Intrinsic acts have "a causal, temporal[,] or spatial connection with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Examples of admissible intrinsic acts are "evidence [that] is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged

6

offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* (citation omitted).

And for the request to order production of the user interface versions of the patient charts and organized tables, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The "suppression" element of a *Brady* violation requires the prosecution team to have had "control" of the material exculpatory evidence, because "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (quotation omitted).

## DISCUSSION

The Court will first address the request to exclude the records of patients not named in the indictment. After, the Court will resolve the request to order production of the user interface versions of the charts and organized tables.

I. <u>Request to Exclude the Records of Patients Not Named in the Indictment</u>

The Court will deny the blanket request to exclude the records of patients not named in the indictment for the same reasons stated in the Court's June 2020 order. *See* ECF 232. The Court does not believe a blanket restriction on the records is appropriate since many of the records constitute proper intrinsic acts evidence to support proof of the conspiracy charges. *Edmond*, 815 F.3d at 1045; *Hardy*, 228 F.3d

at 748. The records of other patients could act as both "prelude" evidence or evidence that "completes the story" of the conspiracies. *Hardy*, 228 F.3d at 748. Even records from patients from before Dr. Lewis joined the practice would be admissible to show that he joined a long-running and in-progress conspiracy.

If Defendants believe that a *specific* record the Government tries to introduce at trial is not appropriate intrinsic acts evidence, they may object at that time. The context of how the Government will use a specific record, and what the record contains, will be more clearly shown at trial. Both Defendants and the Government should make fact-specific arguments for and against admission in the event of objections.

As for whether the admission of records not in the indictment would be substantially more prejudicial than probative, and thus require exclusion under Federal Rule of Evidence 403, the Court harbors doubts that the balance would favor exclusion, but the analysis would be more appropriately conducted at trial as well. While intrinsic acts evidence is usually highly probative, *see Edmond*, 815 F.3d at 1045, a particular piece of intrinsic acts evidence *could* be substantially more prejudicial, *see* Fed. R. Evid. 403. But that determination would be inappropriate to make in a wholesale manner prior to trial because of the fact-specific nature of the various inquiries. If they have any, Defendants should be prepared to make fact-specific objections under Rule 403 at trial.

Finally, the Government will seek to use records of patients not in the indictment and statistical data of prescriptions and billing to prove that Defendants'

prescriptions were not written in good faith and to prove certain elements of the charged crimes. ECF 337, PgID 2459–61. That kind of intrinsic acts evidence is precisely the type of "directly probative" evidence admissible under Sixth Circuit precedent. *Edmond*, 815 F.3d at 1045; *Hardy*, 228 F.3d at 748. The Court will therefore overrule objections to such use of extrinsic acts evidence at trial.

II. <u>Request to Order Production of User Interface Versions of Data and Information</u>

The Court is assured that the Government has turned over all the electronic medical record data in the Government's possession. At issue are the user interface versions of patient charts and organized data tables. Even if the user interface versions of the charts and tables contain additional notes that are exculpatory, that information is in Practice Fusion's possession, not the Government's possession. The Government therefore has not committed a *Brady* violation. *See Graham*, 484 F.3d at 417. Any reading of *Brady* and its progeny by Defendants to the contrary misreads the case law, and particularly misconstrues the word "suppressed." *Id*. The Sixth Circuit has held that Government suppression requires possession and control of information or evidence. *Id*. Here, the Government has acknowledged that the user interface versions of charts and tables exist, but are not in the Government's possession or control. *See generally* ECF 337. Because there is no "affirmative duty upon the [G]overnment to take action to discover information which it does not

9

possess," the Court will deny the request to order production.[3] *Graham*, 484 F.3d at 417 (quotation omitted).

Whether the excel data provided by Practice Fusion contains all the patient information that the doctors input into the system is an issue that the parties may present to the jury. The email Practice Fusion's technical department sent to the Government suggested that all the information is in the excel files and that the files are not mere summaries. *See* ECF 328-1. But Defendants are welcome to call or cross-examine a witness from Practice Fusion, put on their own experts on the issue, or testify themselves about the completeness of the data from their recollection of what they input into the system. Similarly, the Government may question a witness from Practice Fusion about whether Defendants maintain access to the user interface versions of the charts and tables through the practice's account.

There is no doubt counsel for Defendants have and will continue to employ the time necessary to understand and use the excel spreadsheets to conduct their defenses at trial. Talented and sophisticated lawyers and paralegals like those

---

[3] What is more, Defendants cited no legal support to show that they have a right to evidence in a particularly helpful format when that format differs from what the Government used to prepare for trial. *See generally* ECF 328; 341.

defending the case can make unwieldy and complex information understandable to jurors.

## CONCLUSION

The Court will deny the motion in full. Defendants may raise fact-specific objections to particular patient records from outside the indictment at trial, but a blanket objection is unsustainable in view of the fact-specific nature of the inquiry.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to exclude the records of patients not in the indictment and to order production [328] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 27, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 27, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

11