UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

DR. DAVID LEWIS,

                Defendant.

Case No. 2:18-cr-20800-4

HONORABLE STEPHEN J. MURPHY, III

/

**OPINION AND ORDER DENYING MOTION TO RECOVER
ATTORNEY'S FEES AND OTHER LITIGATION EXPENSES [462]**

A jury acquitted Defendant David Lewis of healthcare fraud, unlawful distribution of controlled substances, and conspiracy to commit both. ECF 447, PgID 4873; ECF 456. Defendant then moved to recover attorney's fees and litigation expenses under 18 U.S.C. § 3006A ("The Hyde Amendment").[1] ECF 462. And the Government opposed his motion. ECF 467. For the following reasons, the Court will deny Defendant's motion.[2]

---

[1] Defendant argued that he is entitled to attorney's fees and other litigation expenses "[u]nder 28 U.S.C. § 2412." ECF 462, PgID 5343. But 28 U.S.C. § 2412 is a civil statute. 18 U.S.C. § 3006A is the applicable criminal law counterpart. Section 3006A governs the award of attorney's fees to criminal defendants, although "awards shall be made . . . pursuant to the procedures and limitations (but not the burden of proof) provided for an award under 28 U.S.C. § 2412." *United States v. Skeddle*, 45 F. App'x 443, 445 (6th Cir. 2002) (cleaned up).

[2] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* E.D. Mich. L. Crim. R. 12.1; E.D. Mich. L.R. 7.1(f)(2)

1

## BACKGROUND

Defendant co-owned and operated two professional limited liability companies, the Pain Center and the Interventional Pain Center, that were located in Southeast Michigan. ECF 1, PgID 6. The two facilities were providers that participated with Medicare and Medicaid and the businesses would routinely submit claims for reimbursement to those federal programs. *Id.* Defendant was licensed by the Drug Enforcement Administration to prescribe controlled substances. *Id.* at 6–8.

The Government charged Defendant with one count of conspiracy to commit healthcare fraud, two counts of aiding and abetting health care fraud, aiding and abetting the unlawful distribution of a controlled substances, and conspiracy to unlawfully distribute a controlled substance. ECF 1, PgID 8–10, 19–21, 27–28, 31. Defendant pleaded not guilty to the charges and proceeded to trial. At trial, the Government argued that Defendant prescribed controlled substances "to induce patients to attend reoccurring office visits," prescribed controlled substances "to induce patients to undergo unnecessary medical procedures," and billed Medicare for unnecessary procedures. ECF 1, 19–20. The Government supported its indictment with, among other things, evidence of Medicare claims, Michigan Automated Prescription System ("MAPS") data, and the testimony of expert witness Dr. Neel Mehta. ECF 415; 417; 452. A jury acquitted Defendant of all charges. ECF 456. And

Defendant then moved to recover attorney's fees and litigation expenses because "the charges the Government brought against him were 'frivolous.'" ECF 462, PgID 5343.

## LEGAL STANDARD

"The Hyde Amendment permits courts to award criminal defendants damages when the government takes a position in a prosecution that was vexatious, frivolous, or in bad faith." *Skeddle*, 45 F. App'x at 445 (cleaned up). "The defendant bears the burden of establishing that he is entitled to fees." *United States v. Valueland Auto Sales, Inc.*, 687 F. App'x 503, 506 (6th Cir. 2017). Defendant faces "a daunting burden." *Skeddle*, 45 F. App'x at 445 (quotation omitted). "The Hyde Amendment is not aimed at the general run of prosecutions, or even those that the government loses, but instead at instances of prosecutorial misconduct, where the government had undertaken obviously groundless positions in a prosecution." *Id.* at 446 (cleaned up). Indeed "the mere fact that the government prosecution was unsuccessful does not establish that the prosecution was vexatious, frivolous, or in bad faith." *Id.* at 445 (cleaned up).

A court may award attorney fees and expenses to a criminal defendant whose net worth at indictment did not exceed $2,000,000 and who evidenced: first, that the defendant was a prevailing party; and "[s]econd . . . that the position of the United

3

States was vexatious, frivolous,[3] or in bad faith." *Valueland*, 687 F. App'x at 506 (quotation omitted).

"A position is frivolous if it lacks a reasonable legal basis or where the government lacks a reasonable expectation of obtaining sufficient material evidence by the time of trial." *Valueland*, 687 F. App'x at 507 (cleaned up). To determine whether the United States acted frivolously, the Court should "make only one finding, which should be based on the 'case as an inclusive whole.'" *United States v. Heavrin*, 330 F.3d 723, 730 (6th Cir. 2003) (quoting *Comm'r, INS v. Jean,* 496 U.S. 154, 162 (1990)). "A count-by-count analysis is [thus] inconsistent with this approach." *Id*. And "[t]he fact that only one count among many is frivolous or is not frivolous is not determinative as to whether a movant should receive an award under the Hyde Amendment." *Id*. Indeed "a determination that part of the government's case is frivolous does not automatically entitle the movant to a Hyde Amendment award if the court finds that the government's 'position' as a whole was not vexatious, frivolous, or in bad faith." *Id*.

## DISCUSSION

At trial, a jury acquitted Defendant on all counts. ECF 456. And no party disputed that Defendant was a prevailing party. *See* ECF 462; 467; 471. Thus,

---

[3] Defendant alleged only that the Government's position was frivolous. ECF 462, PgID 5345.

4

Defendant's motion turns on the second element: whether the Government's prosecution of Defendant was frivolous.

Defendant focused on the weaknesses of three pieces of evidence—Medicare claims and MAPS data, Dr. Mehta's testimony, and Henry Butler's testimony—to support its argument that the Government's charges were frivolous. He also raised his acquittal as evidence of the frivolity of the Government's position. The Court will address each piece of evidence in turn. After, the Court will explain why the Government's "case as an inclusive whole" was not frivolous. *Heavrin*, 330 F.3d at 730 (citation omitted).

I. <u>Medicare Claims and MAPS Data</u>

Defendant's first claim that "the Medicare claims and MAPS data the Government presented at trial completely undermine[d] the Government's narrative" does not demonstrate the Government's prosecution was frivolous. ECF 462, PgID 5347. Defendant supported his statement with two arguments. First, he argued that the Medicare claims and MAPS data showed that patients "recover[ed] from their pain," "receiv[ed] fewer injections," and "stopped receiving facet injections altogether" within ninety days. *Id.* at 5347–48. Second, Defendant argued that the Medicare claims and MAPS data "reveal[ed] that there was not a reasonable legal basis for the Government to charge [Defendant]" because "Chapter Eight of the Medicare Program Integrity Manual [] instructs that fraud cannot be determined without pulling a statistically random valid sample of claims" and "that there must be a sustained error

5

rate of greater or equal to fifty percent." *Id.* at 5348–49. But the Government, Defendant noted, only "reviewed 0.002% of the 1,407 patients [Defendant] treated."

Defendant buttressed his first argument with trial exhibits. *See* ECF 462-1; 462-2; 462-3; 462-4; 462-5; 462-6; 462-7; 462-8. But the exhibits refer only to the amount Defendant billed Medicare, $7,873,881.00. *See* ECF 462-1. Defendant, however, billed $55,988,270.00 to Medicaid and $4,616,014.00 to Blue Cross Blue Shield of Michigan in the same period. *See* ECF 467, PgID 5412 (citing Trial Exhibits 36; 38). And the Government charged Defendant with conspiring for (Count 1) and aiding and abetting (Count 30-31) the defrauding of Medicare, *Medicaid, and private insurance plans*. ECF 1, PgID 9, 20. Defendant's argument that 11.5%[4] of the Government's MAPS data appeared routine and non-fraudulent does not mean that the Government "lack[ed] a reasonable legal basis" for charging him. *Valueland*, 687 F. App'x at 507. Indeed, Defendant failed to account for the other 88.5% of the data received as evidence in the case.

What is more, Defendant's assertion that the Medicare data undermined the Government's prosecution lacks logical discipline. Defendant asserted that the Medicare data meant his patients recovered and healed beyond the need for injections, and thus the Government's prosecution of him for unlawful distribution of controlled substances and conspiracy to commit healthcare fraud was frivolous. *See* ECF 462 at 5347–48. But the two positions are not mutually exclusive. A patient may

---

[4] $7,873,881 of Medicare bills set against the combined bills of Medicare, Medicaid, and Blue Cross Blue Shield at $68,476,165.

simultaneously heal and move beyond the need for injections and still receive an unlawful distribution of a controlled substance. Defendant's first argument fails to demonstrate that the Government had no reasonable legal basis for charging him.

And Defendant's second argument misconstrues the Medicare Program Integrity Manual ("Manual"). Defendant argued that the MAPS data was not a reasonable legal basis on which to charge him because "the Government reviewed 0.002% of the 1,407 patients [Defendant] treated, which falls shy of the fifty (50) percent sustained error rate for finding of fraud under the Medicare Program Integrity Manual." ECF 462, PgID 5349. But the Manual instructs, "a high level of payment error shall be determined to exist through a variety of means including, but not limited to: high error rate determinations . . . greater than or equal to 50 percent[;] . . . information from law enforcement investigations; [and] allegations of wrongdoing by current or former employees." Medicare Program Integrity Manual § 8.4.1.4. Consistent with the Manual, the Government did not rely on the "high error rate determinations" alone. *Id. see* ECF 467, PgID 5416. Indeed, two of Defendant's co-workers, Dr. Backos and Dr. Kufner, "admitted to the charged conduct and explained how The Pain Center operated the health care fraud and drug diversion conspiracies." *Id.* Moreover, "[e]mployees and patients also verified that billings were submitted for services that were not performed." *Id.* at 5417. The Government followed the Medicare Program Integrity Manual's guidelines for finding fraud; it did not lack a "reasonable legal basis" for charging Defendant simply because it used MAPS data. *Valueland*, 687 F. App'x at 507.

7

II. <u>Dr. Mehta's Report</u>

Defendant's argument that the Government's reliance on Dr. Mehta's report made its indictment and prosecution of him frivolous is insufficient. ECF 462, PgID 5350–55. Defendant asserted that "Dr. Mehta testified that the report he created for trial—the report the Government based its indictment on—contained at least [thirteen] to [fourteen] erroneous observations and conclusions that [neither] he nor the Government noticed until a week before trial." *Id.* at 5341. But the Government did not utilize Dr. Mehta's report before the grand jury when it sought an indictment of the Defendant. *See* ECF 467, PgID 5407. Moreover, many of the "errors" that Defendant claimed Dr. Mehta made were not errors at all. For example, Defendant asserted, "in the second page of Dr. Mehta's report, [Dr. Mehta] explains that he used a civil standard of care when assessing whether [Defendant] prescribed controlled substances outside the course of professional practice." ECF 462, PgID 5351. And Defendant argued that the error made the Government's prosecution frivolous because Dr. Mehta should have used a criminal standard of care to draw his conclusions. *Id.* at 5351–54. But the Court previously determined that "the portions of the report in which Dr. Mehta draws conclusions about the treatment of certain patients . . . do not plainly conflate the multiple standards used in the report." ECF 370, PgID 2858. Since the Court previously found that Dr. Mehta's report "painted

8

the picture of a well thought out and planned scheme," the Government's reliance on it was not frivolous. *Id.* at 2849.

III. <u>Mr. Butler's Testimony</u>

Defendant's third argument fails to show that the entire prosecution was frivolous. Defendant argued that Mr. Butler's testimony highlighted the frivolity of the Government's position. He reasoned that (1) Mr. Butler's "history of abusing crack cocaine" and the Government's knowledge of that history, (2) Mr. Butler's testimony that "he informed [Defendant] of fictitious symptoms which exceeded those that the Government instructed him to fabricate," and (3) Defendant's medical treatment of Mr. Butler all demonstrated that the Government's prosecution was frivolous. ECF 462, PgID 5355–57.

But the Government did not rely on Mr. Butler's testimony alone to prosecute Defendant. During the six-week trial, the Government called lay and expert witnesses, employed the testimony of Dr. Backos and Dr. Kufner, and offered numerous examinations of patients and employees at The Pain Center. Thus, the weak testimony of one witness does not mark the Government's case as a frivolous prosecution. *See United States v. True*, 250 F.3d 410, 423–24 (6th Cir. 2001) (affirming the denial of attorney's fees even though the defendant was acquitted because of "inconsistencies in the record and the inability of witnesses to recollect events" and despite the defendant's argument that "the [g]overnment deliberately misled key witnesses by withholding facts and coerced its key witness"). To be sure, the Court must examine the "case as an inclusive whole," and not count-by-count or

9

witness-by-witness. *Heavrin*, 330 F.3d at 730 (quotation omitted). All told, the weakness of one witness did not render the Government's entire prosecution frivolous in light of the overall body of evidence introduced by the United States.

IV.  Acquittal

Defendant's argument that the jury's acquittal of him and his co-Defendants establishes a frivolous-prosecution claim is incorrect. He argued that "the jury's decision across all fifty-six [] Counts confirms . . . that the Government's evidence, which it was in possession of prior to trial, was entirely insufficient." ECF 462, PgID 5358. Defendant's argument falls short for two reasons.

First, "acquittal alone is not the standard for an award under the Hyde Amendment." *True*, 250 F.3d at 424. Defendant conceded as much in his brief. ECF 462, PgID 5358. Second, the number of counts on which Defendants were acquitted, fifty-six, is not dispositive. For example, in *Skeddle* the Sixth Circuit denied the defendant attorney's fees despite his acquittal of a 313-count indictment. 45 F. App'x at 444, 447. In short, the fact that the jury acquitted Defendant and his co-Defendants does not itself support Defendant's claim for attorney's fees, and it is not persuasive evidence to show that the Government's position was frivolous.

## CONCLUSION

The Government pursued Defendant on serious criminal charges. Although the Government's pursuit was ultimately unsuccessful, Defendant has not shown that the prosecution lacked a reasonable legal basis. Accordingly, the Court will deny Defendant's motion for attorney's fees and other litigation expenses.

10

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for attorney's fees and litigation expenses [462] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: October 6, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 6, 2022, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager